IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Domenic Cusano, Jr. and Cusano Chiropractic,<br><br>  Plaintiffs,<br><br>v.<br><br>Cook County, Cook County Board of Commissioners, and Toni Preckwinkle, in her official capacity as President of the Board of Commissioners,<br><br>  Defendants. | Case No. 1:22-cv-07196-JHL-MV<br><br>Assigned Judge: Hon. Joan H. Lefkow<br><br>Magistrate Judge: Hon. Maria Valdez |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

The COVID-19 pandemic and corresponding government restrictions devastated small businesses and the entrepreneurs who run them, including those in Cook County, Illinois. An uncertain recovery now has these business owners seeking out valuable opportunities to restore their lives. In September 2022, Cook County launched the Small Business Source Grow Grant to provide relief to small businesses. The program, which uses federal funding from the American Rescue Plan Act of 2021 (ARPA), will distribute $25.5 million to small businesses in grants of $10,000 each, and provide one-on-one business advising.

To distribute the limited amount of grants, the County will consider the race and ethnicity of grant applicants and prioritize applicants that it considers "people of color." Exhibit A to Declaration of Andrew R. Quinio ("Quinio Decl."). The program thus employs racial classifications in distributing grants. Accordingly, it cannot survive constitutional scrutiny unless the government demonstrates that the program's race-based distinction both furthers a compelling government interest and is narrowly tailored to that interest. The government can do neither here.

1

The program's racial preferences do not further a compelling interest because the County has failed to assert that the preferences remedy any racial discrimination in a relevant local industry. And it is not narrowly tailored because the County has not shown why race-neutral criteria that are included in the program do not alone suffice to distribute the $25.5 million in grants.

Plaintiff Domenic Cusano is a white and non-Hispanic individual who applied for the grant on behalf of his business, Plaintiff Cusano Chiropractic, in October 2022. Yet because the grant program provides racial preferences for minority-owned business, Plaintiffs cannot compete on equal footing for COVID-19 relief grants. Because Cook County will distribute the grants in early 2023, preliminary relief is necessary to prevent Defendants from distributing the grant funds in a racially discriminatory manner before this Court can decide the merits of Plaintiffs' claims.

All four elements of the standard for obtaining preliminary relief are satisfied here: Plaintiffs are likely to succeed on the merits of their equal protection claim; they will suffer irreparable harm in the absence of preliminary relief; the balance of hardships tips in Plaintiffs' favor; and an injunction is in the public interest.

## BACKGROUND

**I.  COOK COUNTY'S SMALL BUSINESS SOURCE GROW GRANT**

**A. State and County COVID-19 Pandemic Response**

On March 20, 2020, the Governor of the State of Illinois ordered "non-essential businesses" to cease operation in response to the COVID-19 pandemic. The orders defined businesses as essential based on their activity. State of Ill., Exec. Order No. 10 (Mar. 20, 2020).[1] For example,

---

[1] https://coronavirus.illinois.gov/content/dam/soi/en/web/coronavirus/documents/executiveorder-2020-10.pdf. Plaintiffs respectfully request that this Court take judicial notice of the laws cited in this motion as well as the content of a government agency's website. *See Laborers' Pension Fund*

2

essential businesses included those in the transportation industry and stores that sold groceries and medicine, while non-essential businesses included restaurants that prepared food for consumption on-site. *Id*.

On May 14, 2020, Cook County released the "COVID-19 Response Plan." Cook County, COVID-19 Response Plan (2020).[2] In it, Board of Commissioners President Toni Preckwinkle touted the Department of Health's outstanding job of caring for the sick and protecting the public's health, noting the County's commitment to "treat all patients, regardless of their ability to pay or immigration status." *Id*. The plan listed several of the County's immediate responses to the crisis, including the offering of COVID-19 testing that was "free for every resident in Illinois, regardless of insurance or immigration status," and the release of multi-lingual resources. *Id*. President Preckwinkle declared in the plan, "As we shift from response to recovery, we must recommit ourselves to ensuring residents' race and zip codes do not determine their ability to meaningfully recover from the physical and financial burdens of COVID-19." *Id*. The plan reiterated, "In order to be fully equitable, the recovery must work for all residents, regardless of race. . ." *Id*.

B. **Cook County's Interest in Addressing Historic Exclusion of Communities**

On June 24, 2021, the Board of Commissioners adopted a framework for the County's use of the $1 billion it received in ARPA funds from the federal government. Cook County Board of Commissioners (2021), '21-3657: Implementation of the Cook County American Rescue Plan Act Framework,' *Meeting Details of the Board of Commissioners of Cook County Meeting 24 June*

---

*v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from official website of the FDIC).

[2] https://www.cookcountyil.gov/sites/g/files/ywwepo161/files/service/cook-county-covid-19-response-plan-5-14-2020.pdf.

*2021*, Virtual Meeting.³ The framework implemented a community engagement plan that "focused on historically disinvested communities" and outreach plans that included expanding programs for small and minority-owned businesses. Cook County Board of Commissioners Briefing on the Cook County American Rescue Plan Act Framework (June 24, 2021) (available online).⁴

On October 7, 2021, President Preckwinkle presented the executive budget recommendations for the County budget. Cook County Board of Commissioners (2021), '21-5619: Executive Budget Recommendation for Fiscal Year 2022,' *Minutes of the Board of Commissioners of Cook County Meeting 7 October 2021*, Virtual Meeting.⁵ She recommended tackling disinvestment in "Black and Brown Communities" to ensure that the County "recovers equitably," and focuses on "prioritizing equity." *Id*.

In furtherance of the ARPA framework and budget recommendations, the Commissioners adopted the ARPA Vital Programs Initiative on July 28, 2022. Cook County Board of Commissioners (2022), '22-4414: Resolution for ARPA Vital and Smart Communities Program Initiatives Implemented by the Bureau of Economic Development,' *Meeting Details of the Board of Commissioners of Cook County Meeting 28 July 2022*, Cook County Building.⁶ It directed the County Bureau of Economic Development to partner with non-profit groups, Women's Business Development Center and Allies for Community Business, to implement a $70 million grant program that would provide early-stage business grants to micro-businesses owned by "historically excluded populations," and capital paired with business advising to "historically excluded

---

³ https://cook-county.legistar.com/LegislationDetail.aspx?ID=4993209&GUID=64D122B0-21AB-45AE-8AB7-6F0270273722&Options=&Search=&FullText=1.
⁴ https://www.cookcountyil.gov/sites/g/files/ywwepo161/files/service/arpa-presentationl.pdf.
⁵ https://cook-county.legistar.com/View.ashx?M=M&ID=897203&GUID=C59B7183-DA8F-4E83-A78C-A40099162CED.
⁶ https://cook-county.legistar.com/LegislationDetail.aspx?ID=5735194&GUID=7A06BFEA-7930-498A-BA24-19AF28C5C188&Options=&Search=&FullText=1.

4

businesses—Black-, Latino(a)-, Woman-, Veteran-, Person(s) with a Disability-owned businesses—to close racial wealth and other opportunities gaps." *Id*.

### C. Small Business Source Grow Grant Eligibility and Timeline

The Bureau of Economic Development launched the Source Grow Grant Program on September 29, 2022, which would provide $10,000 in grants paired with one-on-one business advising to "historically excluded businesses—including those owned by entrepreneurs of color, women, veterans, LGBQT+ and persons with a disability—to close racial wealth and opportunity gaps." Press Release, Cook County, Cook County Announces $71 Million Source Grow Grant Program to Help Historically Excluded Small Businesses in Pandemic Recovery (Sept. 29, 2022).[7] The grant program would further prioritize businesses in sectors heavily impacted by COVID-19. *Id*.

To be eligible for the grant, an applicant must own a for-profit business that was started prior to 2020 and is in Cook County. It must employ fewer than 20 full-time employees. It must also show decreased revenue or increased costs due to COVID-19. Cook County Small Business, The Source Grow Grant Application Information Session, YouTube (Oct. 3, 2022), https://www.youtube.com/watch?v=WVwv54GT9Js.[8]

On October 3, 2022, the Women's Business Development Center conducted a webinar on how to apply for the grant and reiterated that "people of color" that owned businesses were among those given priority. *Id*. The webinar's host, Lotika Pai, Managing Director of Access to Capital

---

[7] https://www.cookcountyil.gov/news/cook-county-announces-71-millon-source-grow-grant-program-help-historically-excluded-small.

[8] Plaintiffs respectfully request that this Court take judicial notice of the content of the online video. *Spencer v. Dawson*, No. 04 C 5048, 2006 WL 3253574, at *5 (N.D. Ill. Nov. 7, 2006) (judicial notice taken of video clip as it enhances understanding of the parties' arguments); *see also Missouri Pet Breeders Ass'n v. Cnty. of Cook*, 119 F. Supp. 3d 865, 874 (N.D. Ill. 2015) (judicial notice taken of contents of video that plaintiffs relied on in support of their claims).

at the Women's Business Development Center, emphasized that applicants should carefully and correctly respond to the application's questions about business owner demographics because they establish priority for the grants. *Id*.

Applications for the grant were available online at the Cook County Small Business Source website and could be submitted from October 3, 2022, to October 31, 2022. *Id.* The application required applicants to identify their ethnicity and race, reminding them "that this grant program prioritizes historically excluded populations for selection, including People of Color, Women, Veterans, and Persons with a Disability." Compl., Ex. A. Under "Ethnicity," applicants must mark whether they were "Hispanic, Latino(a), or Spanish," another ethnicity, if their ethnicity was unknown, or if they preferred not to answer. *Id*. Under "Race," applicants must identify themselves by selecting among "American Indian or Alaska Native," "Asian," "Black or African American," "Native Hawaiian or Other Pacific Islander," "White," "Other Race," or "Unknown/Prefer not to answer." *Id*. Applicants were also asked to provide additional information of the race and ethnicity of the business owner, and whether the business was at least 51 percent minority-owned, operated, and controlled. *Id.*

The County received nearly 22,000 applications for the grant program and will award only 2,550 grants to small businesses. Quinio Decl., Ex. B. Grant program administrators will notify applicants of the status of their applications in early 2023 and distribute the grant funds six to eight weeks after. *Id*.

## II.     PLAINTIFFS' SOURCE GROW GRANT APPLICATION

Plaintiff Domenic Cusano owns Cusano Chiropractic, which provides chiropractic care and massage therapy. *See* Declaration of Domenic Cusano ("Cusano Decl.") at ¶ 3. Dr. Cusano depends on the income generated from Cusano Chiropractic. *Id.* The COVID-19 pandemic caused

6

Cusano Chiropractic to lose half of its business, significantly reducing Dr. Cusano's monthly income at the time. *Id*. at ¶ 4.

Dr. Cusano applied for a Cook County Small Business Source Grow Grant in October 2022. *Id*. at ¶ 5. He and his business met the eligibility criteria for the grant and Dr. Cusano timely submitted a grant application on behalf of his business. *Id*. Nonetheless, as Dr. Cusano indicated in his grant application, he is white and not Hispanic, Latino, or Spanish. *Id*. at ¶ 6. His business will therefore be placed at a disadvantage because of the grant program's preferences for minority-owned businesses.[9]

## **LEGAL STANDARD**

A party seeking a preliminary injunction must show (1) a likelihood of success on the merits, (2) a threat of irreparable harm, and (3) an inadequate remedy at law. If those conditions are satisfied, the court must then (4) balance the hardships, and (5) consider the impact on public interest. *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007). Where the government is the opposing party, the last two factors merge. *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 940 (N.D. Ill. 2017). A sliding scale approach is used to balance all four factors. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

The Court may issue class-wide injunctive relief to both the Plaintiffs and the proposed class prior to class certification. *See Lee v. Orr,* No. 13-CV-8719, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013). In *Lee*, the court granted a temporary restraining order to the plaintiffs and proposed class because "The court may conditionally certify the class or otherwise order a broad preliminary injunction, without a formal class ruling, under its general equity powers. The lack of

---

[9] The proposed class includes other businesses and business owners similarly disadvantaged by the grant program's racial preferences.

7

formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons." *Id.* (internal quotations omitted). The *Lee* court ordered preliminary injunctive relief for the proposed subclass of plaintiffs because "the interest of efficiency and economy compel entry of such an order." *Id.*

## ARGUMENT

I. **PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS**

Plaintiffs here are likely to succeed in proving that the County's racially preferential grant program violates the Equal Protection Clause. Laws that distribute benefits or burdens on the basis of racial classifications, such as the Cook County Small Business Source Grow Grant Program, are subject to strict scrutiny. *See Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 (2007) ("[W]hen the government distributes burdens or benefits on the basis of individual racial classifications, that action is reviewed under strict scrutiny."). Under this standard, the government has the burden of proving that racial classifications both (1) further a compelling governmental interest, and (2) are narrowly tailored to further that interest. *Johnson v. California*, 543 U.S. 499, 505 (2005) (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995)). This stringent standard is necessary because "racial classifications are simply too pernicious to permit any but the most exact connection between justification and classification." *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003). And because racial classifications "carry a danger of stigmatic harm," they must be "strictly reserved for remedial settings," lest they "promote notions of racial inferiority and lead to a politics of racial hostility." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989).

The County's grant program plainly imposes racial classifications. The grant program explicitly prioritizes "historically excluded businesses," which includes "people of color." The

Case: 1:22-cv-07196 Document #: 8 Filed: 12/23/22 Page 9 of 15 PageID #:40

grant application reiterated the preference given to minority-owned businesses and accordingly required applicants to indicate their specific ethnicity, race, and whether the business is minority-owned. The grant program thus "distributes burdens or benefits on the basis of individual racial classifications" through its express prioritization of minority business owners. *Parents Involved*, 551 U.S. at 720. The grant program's racial preferences are thus subject to strict scrutiny, requiring Defendants to show that these preferences both further a compelling government interest and are narrowly tailored to further that interest. Plaintiffs are likely to succeed in proving that the preferences fail both requirements.

### A. The County Defendants Do Not Have a Compelling Interest to Justify Racial and Ethnic Preferences in the Grant Program

The Supreme Court has recognized only two interests as compelling enough to justify racial classifications: (1) remedying the past effects of de jure discrimination; and (2) diversity in higher education. *Id*. at 720–22. The interest in diversity in higher education is plainly inapplicable here. Thus, Defendants can only justify the grant program's racial preferences by proving an interest in remedying past de jure discrimination.

The government has a compelling interest in remedying past discrimination only when three criteria are met. *Faust v. Vilsack*, 519 F. Supp. 3d 470, 475 (E.D. Wis. 2021) (citing *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021)). First, the policy must target a specific episode of past discrimination, and cannot rest on a "generalized assertion that there has been past discrimination in an entire industry. *Vitolo*, 999 F.3d at 361 (citing *Croson*, 488 U.S. at 498). Second, there must be evidence of intentional discrimination in the past, and statistical disparities alone cannot show intentional discrimination. *Id*. Third, the government must have had a hand in the past discrimination that it now seeks to remedy. *Id*. Defendants meet none of these requirements.

Defendants have not demonstrated a specific episode of past discrimination that the grant program's racial preferences target. County leaders broadly refer only to their targeting of historically excluded or historically disinvested communities without any reference to any discriminatory events that excluded or disinvested those communities.

Defendants also fail to provide any evidence of intentional discrimination against the favored business owners. The grant's advocates instead point to wealth and opportunity gaps that the program will address, but they do not claim that such gaps are caused by intentional racial discrimination. In other words, the government's reference to "wealth and opportunity gaps" is simply an oblique evocation of statistical disparities and constitutes a "generalized assertion that there has been past discrimination in an entire industry," which is insufficient to establish a compelling interest. *Croson*, 488 U.S. at 498.

Defendants additionally fail to indicate Cook County's involvement in the past discrimination that the program ostensibly remedies. To the contrary, insofar as the program serves to remedy discrimination from COVID-19 pandemic policies, the Cook County COVID-19 Response Plan shows that the government endeavored not to discriminate against any persons during the pandemic. The County touted the care and testing it provided to all patients regardless of background, and the resources it distributed that conscientiously served all-comers. The government's response to COVID-19 similarly did not discriminate on the basis of race, as the state's emergency orders closed businesses based on their activity and not the race or ethnicity of their owners. Defendants ultimately cannot point to any of their own conduct nor the conduct of any other government entity during the pandemic that racially discriminated against the business owners that they now favor.

### B. County Defendants' Ethnic and Racial Preferences Are Not Narrowly Tailored

Even if the Defendants could muster the evidentiary burden required to demonstrate a compelling interest in remedying past discrimination, the grant program's preference for business owners of color is still not narrowly tailored to serve that interest.

The narrow tailoring analysis requires Defendants to engage in "serious, good faith consideration of workable race-neutral alternatives" that would allow them to achieve the interest they believe to be compelling. *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). For instance, the County has offered no reason why race-neutral criteria would not serve its interests just as well. As one example, if the County wanted to provide relief to businesses that were most impacted by the pandemic, it could have prioritized businesses that lost the most revenue or employed a host of other race-neutral factors.

If the County asserts that the grant program remedies past discrimination, they have not engaged in the most obvious remedial alternative that satisfies narrow tailoring, which is to direct the entities responsible for the discrimination to simply stop discriminating on the basis of race. *See Faust*, 519 F. Supp. 3d at 476. If the County is itself the culprit of discrimination, then such directives would be simple to implement. But the County here is not remedying past discrimination, but engaging in discrimination themselves by classifying and preferring businesses based on race. The approach is simply "discrimination for its own sake." *Gratz*, 539 U.S. at 270 (citing *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 307 (1978)).

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT A PRELIMINARY INJUNCTION

The grant program's racial preferences inflict irreparable harm on Plaintiffs by violating their right to equal protection under the law. Courts presume that violations of the constitutional right to equal protection cause irreparable harm. *Baskin v. Bogan*, 983 F. Supp. 2d 1021, 1028

11

(S.D. Ind. 2014); *see also Back v. Carter*, 933 F. Supp. 738, 754 (N.D. Ind. 1996) ("[E]qual protection rights are so fundamental to our society that any violation of those rights causes irreparable harm.").

Plaintiffs are further irreparably harmed because the grant funds will be distributed to businesses in early 2023. Absent a preliminary injunction, there is nothing to prevent the County from exhausting the grant funds well before this case resolves on the merits, thus depriving Plaintiffs of the equal opportunity to compete for those scarce funds under race-neutral criteria. Because the County will only give grants to 2,550 businesses out of the 22,000 businesses that applied, the funds will likely be exhausted by the time Plaintiffs' case is concluded, causing irreparable harm. *See Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1062 (E.D. Wis. 2020) (finding that plaintiffs challenging their exclusion from a federal loan program would be irreparably harmed if preliminary injunction is not granted to prevent the government's exhaustion of loan funds.).[10]

### III. THE BALANCE OF HARMS WEIGHS IN FAVOR OF PLAINTIFFS AND THE PUBLIC INTEREST WOULD BE SERVED BY THE ISSUANCE OF A PRELIMINARY INJUNCTION

The third and fourth factors merge when, like here, the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The irreparable harms that Plaintiffs will suffer without a preliminary injunction outweigh the harm that this preliminary relief would cause Defendants. An order restraining Defendants from implementing the racial preferences in the grant program would serve the public interest because "vindication of constitutional rights serves the public

---

[10] The irreparable harm that Plaintiffs face also demonstrates an inadequate remedy at law that warrants granting a preliminary injunction. *Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*, 497 F. Supp. 3d 319, 332 (N.D. Ill. 2020) ("These two requirements—irreparable harm and no adequate remedy at law—tend to merge.") (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).

interest." *Hope v. Comm'r of Indiana Dep't of Correction*, No. 116CV02865RLYTAB, 2017 WL 1301569, at *8 (S.D. Ind. Apr. 6, 2017) (*citing Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) ("Moreover, if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional.")).

Moreover, Defendants are not at risk of suffering any harm at all. Plaintiffs' proposed injunction would not prevent Defendants from distributing COVID-19 relief. On the contrary, it would only require Defendants to do so without giving preferences to businesses on the basis of race. By contrast, Plaintiffs would suffer an irreparable violation of their constitutional rights absent a preliminary injunction. And if Defendants were allowed to exhaust grant funds using racial preferences, Plaintiffs would forever lose their opportunity to compete for such grants in a program untainted by racial discrimination.

## IV.     NO SECURITY SHOULD BE REQUIRED

A court may exercise its discretion under Rule 65 to refuse to require the successful movant to post security. *See, e.g.*, *Coyne-Delany v. Capital Dev. Bd.*, 717 F.2d 385, 391 (7th Cir. 1985). The Court should not require Plaintiffs to post a bond because Plaintiffs' claim involves the infringement of their constitutional rights, and courts have declined to require the posting of a bond in cases involving constitutional rights. *See Smith v. Bd. of Election Comm'rs for City of Chicago*, 591 F. Supp. 70, 72 (N.D. Ill. 1984) (finding that requiring plaintiffs to post bond would create an unfair hardship and impact negatively on the exercise of their constitutional rights).

Additionally, the Court may waive the bond requirement if there is no danger that the opposing party will incur any damages from the injunction. *Habitat Educ. Ctr. v. U.S. Forest Serv.*,

13

607 F.3d 453, 458 (7th Cir. 2010). Here, the County defendants cannot show that the issuance of a preliminary injunction would cause them any harm, so the Court should not require a bond or any other security.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Preliminary Injunction.

DATED: December 23, 2022.

Respectfully submitted,

                                            PACIFIC LEGAL FOUNDATION

                                            s/ *Wencong Fa*
                                            Wencong Fa,
                                            Cal. Bar No. 301679
                                            Andrew R. Quinio,
                                            Cal. Bar No. 288101*
                                            555 Capitol Mall, Suite 1290
                                            Sacramento, CA 95814
                                            Email: WFa@pacificlegal.org
                                            Email: AQuinio@pacificlegal.org

                                            *Attorneys for Plaintiffs*
                                            **Admission to General Bar forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, I submitted the foregoing to the Clerk of the Court via the District Court's CM/ECF system.

I also certify that I have arranged the following to be served by personal service on the Defendants at the addresses below.

Cook County
States Attorney's Office
69 W. Washington
Chicago, IL 60602

Cook County Board of Commissioners
118 N. Clark Street
Chicago, IL 60602

Toni Preckwinkle, President, Board of Commissioners
118 N. Clark St., Room 537
Chicago, IL 60602

                                                             s/ *Wencong Fa*
                                                             Wencong Fa

                                                             *Attorney for Plaintiffs*